UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN S. STEMPLE, | ) | CASE NO. 1:20-cv-485 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, | ) | |
| Acting Comm'r of Soc. Sec., | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Karen S. Stemple ("Plaintiff") challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 et seq. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 8). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

I. Procedural History

On April 11, 2017, Plaintiff filed her application for DIB, alleging a disability onset date of June 29, 2016. (R. 7, Transcript ("Tr.") 19, 167-170). The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 100-166). Plaintiff participated in the hearing on November 7, 2018, was represented by counsel, and testified. (Tr. 46-64). A vocational expert ("VE") also participated and testified. *Id*. On January 9, 2019, the ALJ found Plaintiff not disabled. (Tr. 33). On December 30, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 5-15). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 13).

Plaintiff asserts the ALJ erred at Step Four of the sequential evaluation. (R. 11, PageID# 641).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On July 1, 2016, Plaintiff was seen at an urgent care center by Steven W. Smith, M.D., after injuring her hip during a slip and fall. (Tr. 439). On examination, Plaintiff had normal musculoskeletal range of motion, no sensory deficits, and tenderness in her lower back. (Tr. 440). A week later, physical examination revealed an antalgic gait. (Tr. 320). X-rays showed bruising of the pelvis but no fracture. *Id*.

On September 23, 2016, Plaintiff saw Ibrahima Goudiaby, D.O., for right hip pain. (Tr. 316-317). Plaintiff was diagnosed with chronic right hip pain and prescribed Percocet. *Id*.

---

[1] The recitation of the evidence is not intended to be exhaustive. As Plaintiff's argument revolves around the weight ascribed to the opinion of one of her physicians, the court includes other evidence primarily for context.

An MRI, on September 26, 2016, revealed degeneration and tearing of the anterior right acetabular labrum. (Tr. 346). Plaintiff had x-rays on October 3, 2016, with findings that indicated her right hip soft tissue was "grossly unremarkable." (Tr. 329).

On October 28, 2016, musculoskeletal examination revealed full range of motion (ROM) with some posterior lateral hip pain on maximal flexion. (Tr. 333). She had mild pain on hip impingement testing. *Id*. Her gait and station were abnormal. *Id*.

On October 31, 2016, Plaintiff underwent an MRI of her lumbar spine revealing mild to moderate neural foraminal stenosis at L3-L4 and L4-L5, and moderate to severe stenosis at L5-S1. (Tr. 340).

On November 1, 2016, Plaintiff saw orthopedic spine surgeon Jason Eubanks, M.D. (Tr. 356). On physical examination, Plaintiff had no pain with ROM of the hips bilaterally, 5 of 5 strength in her legs, negative straight leg raise, and no clonus or hyperreflexia. *Id*. He opined that Plaintiff did not need surgical intervention from a spine standpoint. *Id*.

On November 15, 2021, Plaintiff saw Salim Hayek, M.D., complaining of low back and leg pain. (Tr. 394-398). On examination, Plaintiff had a normal musculoskeletal and neurological examination, as well as normal motor strength, reflexes, and sensation. (Tr. 396). She recommended conservative treatment consisting of lumbar epidural steroid injections, home exercises, and aqua therapy. (Tr. 397). She also was prescribed Tramadol. *Id*.

On January 15, 2018, Plaintiff saw Dr. Hayek for right buttock pain. (Tr. 546). She reported right-sided lower extremity radiculopathy in L4 distribution which terminated at the knee. *Id*. Pain was worse with standing and ambulation, and described as intermittent burning, grinding, and throbbing. *Id*. Plaintiff denied any significant leg weakness. *Id*.

On September 18, 2018, Plaintiff was seen by pain specialist Adam J. Hedaya, M.D. (Tr.

3

418). Her back pain was described as severe and worsening (8 to 10 on a ten-point scale). (Tr. 419). On physical examination, Plaintiff had severe tenderness to palpation over the lumbar sacral spine, positive facet loading bilaterally, considerable guarding and reduced range of motion, normal motor strength and tone, and normal gait and station. (Tr. 419-420).

On October 2, 2018, and again on October 23, 2018, Plaintiff saw Dr. Hedaya for complaints of back and hip pain. (Tr. 425-428, 429-423). Physical examination yielded similar results. (Tr. 426-427, 430-431).

2. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On July 24, 2017, State Agency physician Teresita Cruz, M.D., completed a physical RFC assessment restricting Plaintiff to light work. (Tr. 77-79). She identified Plaintiff's symptoms as pain and fatigue, but indicated that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the medical evidence alone. (Tr. 77). Dr. Cruz explained that Plaintiff claimed she was unable to stand for longer than five minutes despite medical exams showing she had adequate strength. *Id*. Dr. Cruz opined that Plaintiff was restricted to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently, and further limited Plaintiff to standing/walking for four hours and sitting for six hours in an eight-hour workday. (Tr. 78). Dr. Cruz further opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes, or scaffolds. *Id*. Dr. Cruz found no manipulative, visual, or communicative limitations existed, but did restrict Plaintiff from any exposure to hazards. (Tr. 79).

On September 20, 2017, State Agency medical consultant William Bolz, M.D., completed a physical RFC assessment echoing Dr. Cruz's above findings. (Tr. 92-95).

On October 26, 2018, Dr. Hedaya completed a check-box style Physical Medical Source

Statement, indicating he had treated Plaintiff from September 18, 2018 to the present. (Tr. 433-436). He diagnosed Plaintiff with "spondylosis, spinal stenosis, post-laminectomy, and meralgia." (Tr. 433). He described Plaintiff's symptoms as low back pain radiating into hips, hip pain, and difficulty sleeping. *Id*. Plaintiff's pain was described as flaring up "throughout the day, often at night." *Id*. When asked to identify clinical and objective findings supporting his opinion, Dr. Hedaya wrote: "Please see office notes and imaging report." *Id*. Dr. Hedaya reported psychological symptoms related to Plaintiff's pain included depression and anxiety. (Tr. 434). He opined Plaintiff could walk one-quarter of a block without rest or severe pain, sit for 30-45 minutes at a time, and stand for 5-10 minutes at a time. *Id*. Dr. Hedaya further opined that Plaintiff is capable of sitting for a total of two hours in an eight-hour workday and standing/walking for a total of two hours total in an eight-hour workday. *Id*. Plaintiff would also need a sit/stand at-will option. *Id*. Dr. Hedaya opined that Plaintiff would need three to four unscheduled breaks lasting ten to fifteen minutes throughout the workday due to muscle weakness, chronic fatigue, pain and adverse effects of medication. *Id*. Plaintiff did not need to elevate her legs. (Tr. 435). Dr. Hedaya reported that the plaintiff requires a cane to ambulate due to imbalance, insecurity, and weakness. *Id*. Plaintiff could rarely lift ten pounds, stoop, or climb stairs, and never twist, crouch/squat, or climb ladders. *Id*. Dr. Hedaya also checked a box indicating Plaintiff had significant limitations with reaching, handling, and/or fingering. *Id*. Finally, Dr. Hedaya opined that Plaintiff would be off task 25% or more of the workday and was incapable of even low stress work. (Tr. 436).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of*

*Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since June 29, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: post laminectomy syndrome with mild to moderate L3-4 right neural foraminal stenosis and mild left neuroforaminal stenosis, mild to moderate bilateral neural foraminal stenosis at L4-5, decompressive right laminectomy changes at L5-S1, and severe right and moderate to severe left neural foraminal stenosis, and L3-L4 radiculopathy; degeneration and tearing of the anterior right acetabular labrum; meralgia paresthetica; and diabetes (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: She can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. She requires a cane to ambulate.

6. The claimant is capable of performing past relevant work as a legal secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2016, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 21-33).

### V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignment of Error**

In her sole assignment of error, Plaintiff asserts that the ALJ erred at Step Four of the sequential evaluation. (R. 11, PageID# 641-645). Specifically, Plaintiff's argument is founded upon her belief that the ALJ did not accord appropriate weight to the opinion of Dr. Hedaya, whom she describes as her treating pain management specialist. *Id.* at PageID# 644.

### 1. Viability of the Treating Physician Rule

The Commissioner points out that the "treating physician rule" was eliminated by a change in social security regulations that applies to all claims filed after March 27, 2017.[2] (R. 13, PageID# 654). Indeed, the regulations no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 404.1520c. Moreover, the change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources." *Id*. As the SSA has explained, "[c]ourts reviewing claims under [the old] rules … focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision…. [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).

Plaintiff does not contest that the SSA amended the regulations in an attempt to eliminate the treating physician rule. (R. 11, PageID# 643). Nevertheless, Plaintiff argues, in a lengthy footnote, that the treating physician rule survives because it was a judicially created rule that the SSA cannot override. *Id*. Because the treating physician rule predates the Commissioner's regulations, Plaintiff argues that it is "viable separate from the Commissioner's regulatory authority … and *stare decisis* should apply." *Id*. The question is whether the amended regulations invalidate the treating physician rule that has been the standard governing the

---

[2] Plaintiff filed her disability claim in April of 2017, and therefore, it is indisputable that the revised regulations apply to Plaintiff's claim.

9

consideration of treating source opinions in the Sixth Circuit.

The United States Supreme Court has explained as follows:

> "The power of an administrative agency to administer a congressionally created … program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-844 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (applying *Chevron* deference to the SSA's interpretation of the durational requirement for disability).

Notably, Plaintiff has not argued that the revision to the regulations was arbitrary or capricious. (R. 11). Rather, Plaintiff contends that because the judicially created treating physician rule predates the SSA's codification of said rule, the prior judicial construction overrides the SSA's interpretation. A nearly identical argument was rejected by a district court of the Eastern District of California:

> It is a corollary of the *Chevron* doctrine that, because agencies and not judges are experts in the field, a prior judicial construction of a statute will supersede an agency's contrary interpretation only in very narrow circumstances. *Chevron*, 467 U.S. at 865. The Supreme Court has held that "prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).
>
> The Ninth Circuit's prior construction of the Social Security Act, recognizing the TPR [treating physician rule], was not derived from the unambiguous terms of the statute. Indeed, there is no such unambiguous statutory language—the statute does

not address the weight to be given to any type of medical opinion evidence. The TPR evolved with the Court's own interpretation of the overarching statutory provision that courts can only overturn a decision if it is unsupported by substantial evidence.

\*\*\*

After several other circuits adopted their own versions of the TPR as a rule for weighing medical evidence, the Ninth Circuit followed suit. In 1983, our Circuit agreed with the Fifth, Sixth and Second Circuits' practice of giving greater weight to the opinions of treating physicians because of their "greater opportunity to observe and know that patient as an individual." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). As the Supreme Court succinctly explained, "[t]he treating physician rule... was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).

"In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program." *Id*. In promulgating the SSA rules of 1991, the agency noted that "[n]one of the circuit courts of appeals has held that its treating physician rule is required by the Act or Constitution." Final Rules, Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991). The 2017 regulations at issue here changed the Agency's approach. The Agency is free to make such changes, despite extant caselaw, where the judicial interpretations were not themselves compelled by the statutory language. *See Brand X*, *supra*, 545 U.S. at 982.

\*\*\*

The TPR was likewise adopted by the Ninth Circuit based on the persuasive authority of other Circuit Courts of Appeals and not on any mandatory language of the statute that foreclosed agency interpretation. Accordingly, the undersigned concludes that the new regulations regarding the evaluation of medical opinion evidence displace the Ninth Circuit's prior precedents implementing the TPR.

Few courts have yet addressed the question whether the 2017 regulations displace the TPR, but *Brand X* and *Lambert* provide a clear path. "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Brand X*, 545 U.S. at 982-983. None of the Ninth Circuit's TPR cases constitute such a precedent. Accordingly, the agency was free to displace the judicially created rule by regulation. *See Lambert*, 980 F.3d at 1268, 1275.

Because the TPR is inconsistent with the new regulation, the court concludes that

the 2017 regulations effectively displace or override it.

*Agans v. Saul*, No. 2:20-cv-00508, 2021 WL 1388610 at *6–7, 2021 U.S. Dist. LEXIS 71471 (E.D. Cal. Apr. 13, 2021).

Plaintiff cites no authority suggesting that the Sixth Circuit's adoption of the treating physician rule was rooted in a finding that such a rule was compelled by the unambiguous terms of a statute. In addition, similar arguments now raised by Plaintiff have been roundly rejected by courts nationwide. *See, e.g., Douglas v. Saul*, 4:20-cv-822, 2021 U.S. Dist. LEXIS 101588 (N.D. Ala. May 28, 2021) (applying the new regulations and finding that Plaintiff failed to cite any "case in which the Eleventh Circuit has held that the Social Security Act mandated the treating physician rule."); *Olson v. Saul*, No. 20-cv-672, 2021 WL 1783136, 2021 U.S. Dist. LEXIS 85555 (W.D. Wisc. May 5, 2021) (finding SSA's new regulation controlling and rejecting the argument that SSA did not have the authority to repeal it); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217, 2021 WL 1721692, 2021 U.S. Dist. LEXIS 83505 (E.D. Calif. Apr. 30, 2021) (finding "the treating-physician rule must yield to the intervening regulation" under the authority of *Brand X*); *Dany Z. v. Saul*, No. 2:19-cv-217, 2021 WL 1232641, 2021 U.S. Dist. LEXIS 65805 (D. Vt. Mar. 31, 2021) (finding the Second Circuit did not find that "the statute itself was unambiguous in requiring the treating physician rule," and applying the revised regulations); *Harry B. v. Comm'r of Soc. Sec.*, 3:20-cv-227, 2021 U.S. Dist. LEXIS 60509 (N.D.N.Y. Mar. 30, 2021) (rejecting argument that the SSA cannot change pre-existing case law and applying the new regulations); *but see Bevis v. Commissioner of Soc. Sec.*, No. 6:20-cv-579, 2021 WL 3418815 (M.D. Fla. Aug. 5, 2021) (gathering case law and concluding "Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer

good law….").

The court, however, finds that this issue need not be resolved here and it need not determine the continuing application of prior precedent related to the treating physician rule. Because even when considering the ALJ's decision under the new regulations, without the treating physician rule, it is apparent that the ALJ erred with respect to his consideration of Dr. Hedaya's opinion.

**2. Weight Ascribed to the Opinion of Dr. Hedaya**

Plaintiff asserts the ALJ erred by ascribing more weight to the opinions of the State Agency physicians than her treating pain management specialist Dr. Hedaya. (R. 11, PageID# 644-645). As stated above, the regulations no longer ascribe any special significance to a claimant's treating medical sources, explicitly stating that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources." 20 C.F.R. § 404.1520c. While a source's length of treatment, frequency of examinations, and specialization are enumerated factors for an ALJ's consideration under 20 C.F.R. § 404.1520c(c)(3)-(5), an ALJ is "not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section … when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2). Therefore, Plaintiff has not identified any basis for remand simply by pointing out that Dr. Hedaya was a treating source specializing in pain management or that the ALJ did not expressly discuss these factors.

However, the new regulations are not devoid of any requirements relating to an ALJ's duty to explain the weight assigned to medical opinions. As conceded by the Commissioner in his brief, an "ALJ will explain how he or she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a

13

medical source's medical opinion or a prior administrative medical finding." (R. 13, PageID# 658; *citing* 20 C.F.R. § 404.1520c(b)(2).[3] After setting forth the contents of Dr. Hedaya's opinion rendered on October 26, 2018, the ALJ explained the weight he was assigning to the opinion as follows:

> The undersigned finds this opinion to be somewhat persuasive. *The sedentary exertional level is supported by the preponderance of the evidence*. However, the additional breaks, being off-task, missing work, and the non-exertional limitations are unpersuasive because they are not supported by the evidence of record. The claimant has not sought, or received, mental health treatment and she does not take any mental health medications. The claimant is able to perform self-care, drive, shop, spend time with others, watch television, reads, takes her medications, and perform some household duties.

(Tr. 29-30) (emphasis added).

Plaintiff asserts that taking the ALJ's opinion at face value, the ALJ found the opinion persuasive because it is consistent with a sedentary level of exertion. (R. 11, PageID# 645). However, as Plaintiff's brief accurately points out, "Dr. Hedaya's opinion includes limitations for a less than sedentary residual functional capacity, as he states that Plaintiff is capable of standing and sitting for only two hours total in and eight-hour workday." *Id*.

Indeed, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are

---

[3] "Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).

required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Furthermore, " '[o]ccasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30, at *13, 1983 WL 31251 *5-6 (1983). Therefore, Dr. Hedaya's opinion that Plaintiff could sit for a total of two hours and stand/walk for a total of two hours is clearly inconsistent with an ability to perform sedentary work.

Thus, it is patently unclear what portion of the opinion the ALJ found "somewhat persuasive." A reasonable interpretation of the ALJ's statement is that he misconstrued Dr. Hedaya's opinion as being consistent with the physical demands of sedentary. This interpretation is buttressed by a statement later in the decision that inaccurately states: "No treating source refers to the claimant as having incapacitating or debilitating symptoms that would prevent her from returning to her past relevant work, or other work at a reduced level of exertion such as in the performance of sedentary work…." (Tr. 30). The ALJ's observation, however, is inaccurate, as Dr. Hedaya's opinion would clearly preclude sedentary work.

The decision is problematic because this reviewing court cannot discern what the ALJ intended. As a rule, the ALJ must build an accurate and logical bridge between the evidence and the ALJ's conclusion. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004). "Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Castello v. Commissioner of Social Sec.*, 5:09 CV 2569, 2011 U.S. Dist. LEXIS 13659, 2011 WL 610590, at *2 (N.D. Ohio Jan 10, 2011) (quoting *Giles v. Astrue*, 483

15

F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ's analysis must allow reviewing court to trace the path of her reasoning) (*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

If the ALJ intended to *reject* Dr. Hedaya's opinion that Plaintiff could only sit for a total of two hours during a workday, the ALJ did not do so in a manner that is clear to this court. Moreover, while the ALJ was no longer required to give "good reasons" for rejecting such an opinion per the old requirements of the treating physician rule, the decision is not compliant with the new regulations as it does not discuss the work-preclusive sitting and standing limitations in terms of their supportability and consistency. Therefore, the court finds a remand is necessary to address the shortcomings of the ALJ's decision as identified in this opinion.

### VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 7, 2021